**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| NATHAN SMITH,<br><br>               Plaintiff,<br><br>    v.<br><br>MAGENTA THERAPEUTICS, INC., ALISON LAWTON, JEFFREY ALBERS, BRUCE BOOTH, THOMAS DANIEL, DAVID SCADDEN, ANNE MCGEORGE, AMY RONNEBERG, and MICHAEL VASCONCELLES,<br><br>               Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Nathan Smith ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Magenta Therapeutics, Inc. ("Magenta" or the "Company") and the members of Magenta's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Magenta with Dianthus Therapeutics, Inc. ("Dianthus") (the "Proposed Transaction").

2. On May 2, 2023, Magenta, Magenta's wholly-owned subsidiary Dio Merger Sub, Inc. ("Merger Sub") and Dianthus entered into an Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Magenta and Dianthus will

combine, with Dianthus common stock converted into the right to receive Magenta shares equal to the exchange ratio ("Exchange Ratio"), which is expected to be approximately 3.64 shares of Magenta's common stock for each share of Dianthus common stock, subject to adjustment based on Magenta's net cash at closing and the aggregate proceeds from the sale of Dianthus common stock and Dianthus pre-funded warrants in the Dianthus pre-closing financing. Magenta stockholders will receive one non-transferable contingent value right ("CVR")[1] for each outstanding share of Magenta common stock. Upon closing of the Proposed Transaction, Magenta's and Dianthus' current stockholders (taking into account the pre-closing financing) will own approximately 22.4% and 77.6% of the combined company, respectively.

3. Under the Merger Agreement, Magenta is required to issue additional shares of Magenta common stock (the "Share Issuance"). As a Nasdaq listed company, Magenta is required by Nasdaq listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock and before issuing securities that will result in a "change of control" of the company. Thus, the Proposed Transaction is contingent upon Magenta shareholders voting to approve the proposed Share Issuance.

4. On August 1, 2023, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. Specifically, the Prospectus, which recommends that Magenta stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, contains materially incomplete and misleading information

---

[1] Each CVR holder is entitled to certain rights to receive a pro rata portion of the proceeds, if any, received by Magenta as a result of (i) contingent payments made to Magenta, such as milestone, royalty or earnout, when received under any pre-merger disposition agreements related to Magenta's pre-merger assets (which includes milestone payments under the April 2023 asset purchase agreements pertaining to Magenta's MGTA-145 and MGTA-45 programs and the CD117 antibodies including the clinical antibody that was used with MGTA-117) and (ii) a Magenta asset sale after the effective date of the merger and prior to December 31, 2023, received within a three-year period following the closing of the merger.

concerning, among other things: (i) Dianthus' financial projections, Magenta's assets and the financial analyses that support the fairness opinion provided by the Company's financial advisor Houlihan Lokey Capital, Inc. ("Houlihan Lokey"); (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Houlihan Lokey and the Company's additional financial advisor, Wedbush Securities Inc. ("Wedbush").

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Magenta stockholders need such information in order to make a fully informed decision in connection with the Share Issuance and Proposed Transaction.

6. The special meeting for Magenta stockholders to vote on the Share Issuance and Proposed Transaction is currently scheduled for September 8, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Magenta's other shareholders to make an informed decision whether to vote their shares in favor of the Share Issuance and Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.    Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

10.   Plaintiff is, and has been at all relevant times, the owner of shares of Magenta common stock.

11.   Defendant Magenta is a Delaware corporation, with its principal executive offices located at 300 Technology Square, 8th Floor, Cambridge, Massachusetts 02139.  Magenta's shares trade on the Nasdaq Capital Market under the ticker symbol "MGTA."

12.   Defendant Alison Lawton has been Chair of the Board and a director of the Company at all relevant times.

13.   Defendant Jeffrey Albers ("Albers") has been a director of the Company at all relevant times.

14.   Defendant Bruce Booth ("Booth") is a founding investor of the Company and has been a director of the Company at all relevant times.

15.   Defendant Thomas Daniel has been a director of the Company at all relevant times.

16.   Defendant David Scadden is a co-founder of the Company and has been a director of the Company at all relevant times.

17.   Defendant Anne McGeorge has been a director of the Company at all relevant times.

18.   Defendant Amy Ronneberg has been a director of the Company at all relevant times.

19. Defendant Michael Vasconcelles has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 12-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

21. Magenta is a biotechnology company previously focused on improving stem cell transplantation. Magenta's drug development pipeline included multiple clinical and preclinical product candidates that were designed to improve stem cell transplant. In January 2023, Magenta voluntarily paused dosing in its MGTA-117 Phase 1/2 clinical trial for MGTA-117 in patients with relapsed/refractory acute myeloid leukemia, and myelodysplastic syndromes after the last participant dosed in Cohort 3 in the clinical trial experienced a Grade 5 serious adverse event deemed to be possibly related to MGTA-117.

**The Proposed Transaction**

22. On May 3, 2023, Magenta announced the Proposed Transaction, stating, in relevant part:

> **CAMBRIDGE, Mass., May 3, 2023** – Magenta Therapeutics, Inc. (Nasdaq: MGTA) ("Magenta") and Dianthus Therapeutics, Inc. ("Dianthus"), a privately-held, clinical-stage biotechnology company dedicated to advancing the next generation of antibody complement therapeutics, announced today that they have entered into a definitive merger agreement to combine the companies in an all-stock transaction. The combined company will focus on advancing Dianthus' pipeline of next-generation complement inhibitors, including DNTH103 currently in a Phase 1 clinical trial. Upon completion of the merger, the combined company is expected to operate under the name Dianthus Therapeutics, Inc. and trade on the Nasdaq under the ticker symbol "DNTH".
>
> In support of the merger, Dianthus has secured commitments for a $70 million private investment in its common stock and pre-funded warrants from a syndicate of healthcare investors led by Fidelity Management & Research Company, Catalio

Capital Management, 5AM Ventures, Avidity Partners, Wedbush Healthcare Partners and founding investors Fairmount, Tellus BioVentures and Venrock Healthcare Capital Partners, that is expected to close immediately prior to completion of the merger. With the cash expected from both companies at closing and the proceeds of the concurrent private financing, the combined company is expected to have approximately $180 million of cash or cash equivalents immediately post-closing. The cash resources are intended to be used to advance Dianthus' pipeline through multiple clinical data catalysts and is expected to fund operations into mid-2026. The merger and related financing are expected to close in the third quarter of 2023.

"I'm delighted to announce this planned merger with Magenta, which comes at a pivotal moment in the evolution of our company as we advance our pipeline of next-generation complement therapeutics for people living with severe autoimmune diseases," said Marino Garcia, President and Chief Executive Officer of Dianthus Therapeutics. "Gaining access to the public capital markets can enhance our financial strength and fuel our growth strategy, enabling us to unlock the full potential of our pipeline, including our plans to address multiple autoimmune disorders with our clinical-stage active C1s inhibitor, DNTH103."

"After a thorough exploration of our strategic alternatives, management and our Board of Directors believe the transaction with Dianthus Therapeutics will culminate in a successful outcome for our stockholders," said Steve Mahoney, President, Chief Financial and Operating Officer of Magenta. "Dianthus has made rapid progress in developing and advancing DNTH103 into the clinic where it has the potential to be a transformative classical pathway inhibitor for severe autoimmune diseases. We are extremely grateful to our current and former employees who contributed to Magenta's efforts to develop its programs and we now look forward to the combined company's advancement on opportunities for value creation for patients."

Magenta previously announced a comprehensive review of strategic alternatives in February 2023 and has since completed winding down a majority of its activities and costs associated with its research and development initiatives, including the termination of its lease and the sale of key assets.

**About DNTH103**

DNTH103 is an investigational long-acting classical complement pathway inhibitor designed as a less frequent and convenient subcutaneous injection with the potential to treat people living with severe autoimmune diseases. DNTH103, a fully human monoclonal antibody, is designed to selectively target only the active form of the C1s complement protein, inhibiting only the classical complement pathway, with the aim of treating patients with a lower dosing volume as a convenient subcutaneous injection suitable for a self-administered pre-filled pen. Inhibiting the active form of the complement target seeks to address a critical treatment gap in

current complement therapies that do not bind selectively to the active protein, wasting a significant amount of the drug on inert proteins. DNTH103 selective inhibition of the classical pathway is engineered to preserve important immune activity of the lectin and alternative complement pathways needed to protect the body against infections from encapsulated bacteria. DNTH103 is also enhanced with YTE half-life extension technology to further reduce dosing frequency.

DNTH103 has a steady cadence of clinical milestones including top-line Phase 1 data aiming to confirm potent classical pathway inhibition and favorable, extended pharmacokinetics expected by the end of 2023, initiation of a Phase 2 trial in generalized Myasthenia Gravis expected in the first quarter of 2024 followed by two additional planned Phase 2 trial initiations in other neuro indications, and planned initiation of an open label proof of efficacy trial in Cold Agglutinin Disease with patient data anticipated in the second half of 2024.

**About the Proposed Transaction, Management and Organization**

Pre-merger Dianthus stockholders (including Dianthus stockholders issued shares of Dianthus common stock and pre-funded warrants in the concurrent private financing) are expected to own approximately 78.7% of the combined company and pre-merger Magenta stockholders are expected to own approximately 21.3% of the combined company. The percentage of the combined company that Magenta's stockholders will own as of the close of the transaction is subject to adjustment based on the amount of Magenta's net cash at the closing date. Immediately prior to the closing of the proposed merger, Magenta stockholders will be issued contingent value rights representing the right to receive certain payments from proceeds received by the combined company, if any, related to pre-transaction legacy assets.

Following the merger, the combined company will be led by Marino Garcia, the current CEO and President of Dianthus Therapeutics, and the current members of the Dianthus management team. Magenta Therapeutics, Inc. will be renamed "Dianthus Therapeutics, Inc." and the corporate headquarters will be co-located in New York, NY and Waltham, MA. The merger agreement provides that the Board of Directors of the combined company will be composed of eight board members, including all six current Dianthus board members and two from Magenta. The transaction has been unanimously approved by the Board of Directors of each company and is expected to close in the third quarter of 2023, subject to customary closing conditions, including, the approvals by the stockholders of each company and other customary closing conditions.

Wedbush PacGrow is serving as lead financial advisor, Houlihan Lokey Financial Advisors is serving as co-financial adviser and Goodwin Procter LLP is serving as legal counsel to Magenta Therapeutics. Jefferies, Evercore ISI, Guggenheim Securities and Raymond James are serving as the placement agents to Dianthus

Therapeutics, and Gibson, Dunn & Crutcher LLP is serving as legal counsel to Dianthus Therapeutics.

**The Materially Incomplete and Misleading Prospectus**

23. On August 1, 2023, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that Magenta stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) Dianthus' financial projections, Magenta's assets, and the financial analyses that support the fairness opinion provided by the Company's financial advisor Houlihan Lokey; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Houlihan Lokey and the Company's additional financial advisor, Wedbush.

*Material Misrepresentations and/or Omissions Concerning Dianthus' Financial Projections, Magenta's Assets and Houlihan Lokey's Financial Analyses*

24. The Prospectus fails to disclose material information concerning Dianthus' financial projections and Houlihan Lokey's financial analyses.

25. For example, the Prospectus fails to disclose a summary of the "information regarding the nature of, and indications to be addressed by, Dianthus' potential products, the current status and expected future timing of clinical development of Dianthus' products, and associated cash expenditure forecasts (collectively, the 'Dianthus Development Information')" relied upon by the Company's financial advisor, Houlihan Lokey, in connection with its fairness opinion. Prospectus at 159.

26. Additionally, with respect to the Company's April 7, 2023 entry into an asset purchase agreement for the sale of certain Magenta assets related to MGTA-45, April 20, 2023 entry into an asset purchase agreement for the sale of certain Magenta assets related to MGTA-

145, and April 21, 2023 entry into an asset purchase agreement for the sale of certain Magenta assets related to the CD117 antibodies associated with MGTA-117, the Prospectus fails to disclose a summary of: (i) any potential valuations or analyses of the assets reviewed by the Board, Company management and/or Houlihan Lokey; and (ii) any Board deliberations regarding the sale and/or valuation of these assets.

27. Moreover, the Prospectus fails to disclose a summary of Houlihan Lokey's review of the publicly available financial terms of certain transactions that Houlihan Lokey deemed to be relevant. *See id.*

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

28. The Prospectus fails to disclose material information concerning the background of the Proposed Transaction.

29. Specifically, the Prospectus fails to disclose whether the joinder to the confidentiality agreement the Company executed with Party A includes a "don't-ask, don't-waive" standstill provision that is still in effect and currently precluding Party A from making a topping bid for the Company.

30. Additionally, with respect to the transaction committee of the Board (the "Transaction Committee"), the Prospectus fails to disclose: (i) a summary of the powers provided to the Transaction Committee under its mandate or charter, including whether the Transaction Committee was provided full negotiating power, including the power to reject the Proposed Transaction; and (ii) the Board's basis for appointing defendants Albers and Booth to the Transaction Committee despite the "potential conflicts between certain members of Magenta's board of directors, including [defendants Albers and Booth], and certain potential counterparties to a potential strategic transaction" discussed at the February 27, 2023 Board meeting. *Id.* at 141.

*Material Misrepresentations and/or Omissions Concerning Houlihan Lokey's and Wedbush's Potential Conflicts of Interest*

31. The Prospectus fails to disclose material information concerning potential conflicts of interest faced by Houlihan Lokey.

32. For example, the Prospectus fails to disclose whether Houlihan Lokey has performed any services for Dianthus or its affiliates in the two years preceding the date of its fairness opinion, and if so, a summary of the services performed and any compensation received in connection with such services.

33. Additionally, with respect to the potential conflicts of interest faced by Wedbush, the Prospectus fails to disclose: (i) whether Wedbush has performed any services for Magenta, Dianthus or their respective affiliates in the prior two years, and if so, a summary of the services performed and any compensation received in connection with such services; (ii) when Wedbush's affiliate, Wedbush Healthcare Partners, first indicated interest in investing in Dianthus; (iii) the approximate ownership percentage of the combined company that Wedbush Healthcare Partners expect to hold upon closing of the Proposed Transaction; and (iv) the identity of the other potential counterparty that Wedbush Healthcare Partners was an investor in (*see id.* at 141).

34. In sum, the omission of the above-referenced information renders statements in the "Opinion of Houlihan Lokey to the Magenta Board" and "Background of the Merger" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Magenta will be unable to make a sufficiently informed decision in connection with the Share Issuance and Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Magenta**

35. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Magenta is liable as the issuer of these statements.

37. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

38. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

40. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

41. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Magenta within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Magenta and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

47. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Magenta, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 15, 2023

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Telephone: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*